# EXHIBIT 4

SUPERIOR COURT OF CALIFORNIA
COUNTY OF ALAMEDA, STATE OF CALIFORNIA

Dept. 8
corr

THE PEOPLE OF THE STATE OF CALIFORNIA

VS

TYSON, MORGAN ANDRE

DEFENDANT

## PROBATION OFFICER'S REPORT AND RECOMMENDATION

EVENT NAME    TYSON, MORGAN ANDRE
C.I.I. NAME   TYSON, MORGAN ANDRE                     JUDGE            Karesh

ADDRESS   2525 East 28th Street, Oakland, CA          DEPARTMENT NO.   95

D.O.B.    12/31/51        (AGE: 31 )                  DOCKET NO.       75513

SEX       MALE            ETHNIC    BLACK             REFERRAL DATE    12/23/83

HT.   5FT 5IN   WT. 140   HAIR      BLACK
C.I.I. NO.   07293134                                 COURT DATE       01/20/84
                                                      Continued:       02/03/84
                                                                       2-17-84
CEN.      2060285                                     DEFENSE ATTORNEY PD-SAWYER

PFN.      AMX770                                      REPORT BY        Jacqueline Townsend
                                                                       DEPUTY PROBATION OFFICER III

CHARGES FILED    PC 245A(1)GBI F; PC 211ATT U/G F; PC 211 U/GBI F
   PC 211 U/GBI F; PC 245A(1)GBI F; PC 187 U/GBI F
   PC 245A(1) F; PC 211ATT/USE F; PC 211 USE F
   PC 211 USE F; PC 245A(1) F; PC 187-2ND/U 1/PR F                                        1
CURRENT CHARGES    PC 245A(1) F; PC 211ATT/USE F; PC 211 USE F
   PC 245A(1) F; PC 187-2ND/U 1/PR F; PC 211 F

**DOCUMENTS FILMED**   M.O

CHARGE STATUS    JURY TRIAL

DATE AND PLACE OF    ARREST              ARREST AGENCY    OAKLAND PD

   07/27/82    SAN DIEGO CSO       OA

CURRENT CUSTODY STATUS    IN CUSTODY     DAYS IN JAIL THIS CHARGE    557 + 14 = 571

CUSTODY STATUS THIS CHARGE    IN CUSTODY
                              O.R. ON                   BAILED ON              AMOUNT $

                              LIVES                     INCOME
MARRIED: Yes___  No  x  WITH    relatives               SOURCE    unemployed

CRIMINAL HISTORY

Juvenile: No record located or admitted.

Adult:

| Offense Date | Offense | Disposition |
|---|---|---|
| 1/21/78<br>Columbus, GA | Entering auto and rape | Convicted of auto charge 3/20/78; Confinement three years, concurrent with rape charge, for which convicted 3/20/78; Confinement 8 years; Discharged 5/2/82, expiration of sentence. |
| 7/27/82<br>San Diego, CA | Warrant from Alameda County charging 245(A) PC, assault with deadly weapon; 211 PC, robbery; 187 PC, murder; 211 PC, robbery; 245 PC, assault with deadly weapon. | |

FBI, CII and CORPUS records received. In addition to the above entries, it appears from CORPUS records that the defendant was booked on July 30, 1982 by the Oakland Police on a complaint filed September 7, 1977, alleging violation of Section 11357B Health and Safety Code misdemeanor charge and a 166.4 PC misdemeanor contempt charge, both of which were dismissed in Oakland Municipal Court, Department 10 on July 30, 1982 in Docket No. 122693. In addition the FBI record indicates an entry in Columbus, Georgia, August 26, 1976 for criminal trespass with the defendant released on bail or on his own recognizance and no disposition provided.

A recent CORPUS events history indicates that the defendant was also arrested June 1, 1983 by the Alameda County Sheriff's Department for violation of Section 4532(D) PC, felony, an escape charge, with a complaint filed November 14, 1983 and arraignment in Alameda County Superior Court, Department 11 in Docket No. 77661. The defense attorney indicates that the escape charge is still pending disposition following the defendant's sentencing in the instant case. *Case dismissed 2-3-84. See "Detainer" Section*

PRESENT OFFENSE

Summary of Offense: The District Attorney's letter attached summarizes the various charges in detail. The charges involved the initial incident on June 21, 1982 when Karen Kline was stabbed in the head and chest and knocked to the ground. She was robbed of her purse and treated at the local emergency hospital. A second incident involved a July 1, 1982 assault on Tina Boston, at midnight in the presence of her seven-year-old niece. Her purse was stolen, and she was knocked to the ground. A third incident occurred July 4, 1982 when Janet Charles was accosted near midnight and knocked to the ground and her assailant

attempting to steal her purse with the assailant then fleeing the scene. On July 10, 1983, Gail Williams, during the early morning hours was found clothed and bleeding, in the apartment building which she occupied, reporting that she had been stabbed by an unknown person. She died several hours later in Highland Hospital from three stab wounds. The defendant was identified through family sources, and arrested in his brother's home in National City, California July 27, 1982 and returned to Oakland July 29, 1982.

Negotiated Plea: The Felony Disposition Summary attached indicates that the defendant was convicted by a jury trial of the following charges: PC 245A(1) F; PC 211 ATT/USE F; PC 211 USE F; PC 245A(1) F; PC 187-2ND/U 1/PR F; PC 211 F. The defendant was not convicted on Count Three of the use clause and was not convicted on a prior rape conviction in Georgia.

Victim Notification: The deceased victim's father and boyfriend were notified by mail on January 27, 1984 as to their right to appear at time of sentence. The three surviving victims were notified by mail and two by telephone of their right to appear at time of sentence and to make a statement regarding sentencing. However, in the case of the third victim, Tina Boston, the address provided by the District Attorney's Office at 1006 18th Street, Apt. #2, Oakland, apparently is incorrect as the letter was returned indicating there was no such address. It was re-sent January 27, 1984.

District Attorney's Letter: The District Attorney's letter is attached.

Defendant's Statement: The defendant was interviewed by the undersigned on January 9, 1984 at the Oakland Courthouse Jail, with the defendant declining to submit a handwritten statement regarding the charges. He indicated that he had given a confession, and that he did not wish to discuss the cases in detail. He stated only that he would admit to the stabbings but declined to discuss the matters further. He stated further that he would undergo psychiatric treatment in prison if required and was requesting protective custody classification. He denied knowing any of the victims, and stated he had terminated his drug usage upon his release from prison in Georgia and that drugs were not involved in the instant cases. He had returned from prison approximately May 2, 1982 to reside with his mother, and was arrested in his brother's home in National City.

Time in Custody: The defendant was arrested, according to the CII record, in San Diego, July 29, 1982 on the basis of the Alameda County warrants, and returned to Alameda County on July 29, 1982 where he has since remained in custody, first at the Courthouse Jail, Oakland, and subsequently at Santa Rita where he remains to date, with a total of 557 days credit for time served in Docket No. 75513.

Defense Attorney's Statement: Attached

SOCIAL FACTORS

Family Background: The defendant, when interviewed indicated he was born in Virginia December 31, 1951 to Morgan and Bernell Tyson, with his father serving in the military. After several years in Germany, with his parents, the defendant returned to the states, where he resided in Columbus, Georgia for several years, until his parents separated. His father remains in Columbus, Goergia and his mother has since 1977 resided in Oakland, maintaining a family residence at 2525 East 28th Street. The defendant states he believes his father still supports his mother with some assistant from the adult siblings. He lists

-4-

two brothers, one in San Diego in the United States Navy, one residing in Oakland and in the United States Merchant Marines. He lists one sister in San Diego who is married and attends school. The defendant did not appear anxious to discuss his family relationships and indicated that his mother was in Detroit temporarily due to an uncle's illness but will be returning prior to his sentencing date.

Education and Employment: The defendant stated he had attended elementary school in Germany, returning to the Columbus, Georgia area in the second grade where he continued through to the ninth or tenth grade in high school. Due to difficulties, he last attended Carver High School, Columbus, but terminated during the eleventh grade to marry.

As far as employment, the defendant apparently has had intermittent and short term employment as a janitor, gas station attendant, clerk, but could provide no specific instances of any employers or their locations for verification purposes. The defendant states he is interested in TV and radio repair and would like to receive vocational training while in prison.

Marital History: The defendant reported that he had married Beverly Norris, at age 19, in Columbus, Georgia, by whom he has two daughters, now ages 11 and 13. He states that their marriage lasted two years and was terminated primarily due to his drug abuse. He lists a divorce in 1974 in Columbus, Georgia, and states he believes his wife and daughters are residing in South Carolina or in New York state. He believes his wife has remarried and may be employed as a waitress.

Financial Status: The defendants lists no ownership of property or equity or outstanding liabilities. He indicates that due to his military service, he believes he is eligible for Veteran's Administration benefits.

Military History: The defendant enlisted in the United States Navy February 12, 1970 for a two year stint, and was discharged July 9, 1971 from the Naval Station, Philadelphia, Pennsylvania under honorable conditions according to the military records submitted by his defense attorney. He indicated that he had served a year in England as a boatswain's mate-welder, but there is no indication on his military record as to his overseas duty.

Drug and Alcohol History: The defendant denies the use of intoxicants. He stated he used a variety of narcotics and dangerous drugs but did not wish to list them for the undersigned deputy. However, a psychiatric record indicates a variety of drugs and drug abuse since he was a teenager and hospitalization at Gladman Hospital, Oakland in August of 1977 and at Highland Hospital in 1977 as well for behavior related to drug abuse.

Prior Probation History: It does not appear that the defendant has ever been under formal probation supervision.

Institutional and Parole History: The defendant was committed to the Georgia State Prison, Atlanta, on March 20, 1978 on a rape and auto entering charge, with sentences to run concurrently, with the auto charge carrying a three year sentence and the rape charge an eight year sentence, with the defendant serving four years, and being discharged May 2, 1982 at expiration of sentence.

<u>Medical and Psychiatric History</u>: The defendant states he has usually been in fairly good health but suffered from a severe case of pneumonia at six months of age. He denies any current medical problems.

The defendant's extensive psychiatric treatment record is attached indicating that the defendant may have been evaluated by a psychiatrist as young as 12 or 13 years of age, as arranged by his mother due to his behavioral difficulties. Apparently in November of 1975 he was admitted to the VA Hospital in Tuskegee, Alabama, where he remained for three weeks, was medicated and then terminated treatment. In July, 1977, the defendant's mother requested a psychiatric evaluation at the East Oakland Mental Health Clinic, with the defendant being taken to Highland Hospital but leaving before the interview was completed. In August he was again hospitalized according to the attached psychiatric report, on a 5150 petition, by the police, where he was reportedly under the influence of drugs and involved in some criminal activity. He remained for approximately eight days, and was discharged with out patient treatment arranged through Gladman Hospital Day Treatment Program, Oakland, from August 29, 1977 until September 7, 1977. The defendant was also apparently seen on a regular basis from July, 1977 until February 8, 1978 at the East Oakland Mental Health Clinic where he was evaluated and treated. He subsequently returned to Georgia and was not again involved in psychiatric treatment apparently until his return to Alameda County and his arrest on the instant case. The defense attorney has submitted the attached report from Dr. Burstein reviewing the defendant's past and current psychiatric and psychological treatment record.

<u>Restitution</u>: In view of the defendant's impending incarceration, restitution would not be appropriate. However, the two victims who responded to the restitution form indicated that they were covered by their medical health plans and would not be submitting restitution requests. Apparently Janet Charles was hospitalized for a day and a half, may have some outstanding bills still pending, however and Karen Kline was treated at Highland on an emergency basis but lost one week of her employment due to the stab wounds to head and chest. The third victim, Tina Boston, has not yet responded due to an incorrect address. The deceased victim's family was sent the customary notification letter including a restitution request form, on January 27, 1984 and may not have had sufficient time to adequately respond. However, if they submit a restitution request through the Victim Compensation Fund, the District Attorney's Victim/Witness Program will be notified.

SENTENCING FACTORS

<u>Rule 414</u>: Criteria Affecting Probation:

(a)    The defendant is statutorily ineligible for probation.

(b)    The circumstances of the instant offenses strongly suggest that the defendant would be a serious danger if he remains free in the community.

(c)(1)    The defendant's crime was extremely serious and resulted in one death.

(c)(2)    The four victims were inordinately vulnerable due to the late hours and circumstances of the assaults including stealth and surprise by the defendant who attacked without provocation.

(c)(3)     The defendant used a knife and scissors in the commission of the instant offenses.

(c)(4)     The defendant inflicted grevious bodily injury on the deceased victim.

(d)(1)     The defendant's prior record of criminal conduct, although not extending over a lengthy period of time, does indicate a prior felony conviction in Georgia.

(d)(2)     The defendant has a prior state prison commitment in Georgia.

(d)(4,5)     The defendant's age, his incomplete formal schooling, dysfunctional family background, and insubstantial employment history are all negative factors with regard to his suitability for probation.

(d)(9)     The defendant has apparently not expressed remorse with regard to his behavior in the instant matter.

Rule 421: Circumstances In Aggravation: The District Attorney's letter attached indicates several circumstances in aggravation including California Rules of Court 421(a)(1) through (4). In addition, the letter cites Rule 421(b)(1, 3) as applicable.

(a)(1)     The defendant's crime involved great bodily harm.

(a)(2)     The defendant used a knife and scissors with which he stabbed the victims.

(a)(3)     The victims were particularly vulnerable due to the nighttime hour and the stealth and surprise used by the defendant.

(a)(4)     The defendant's crime involved multiple victims.

(b)(2)     The defendant has a prior prison commitment in Georgia for a serious felony.

(b)(3)     The defendant has served a prior prison term.

Rule 423: Circumstances In Mitigation:

(d)(2)     The defendant may have been suffering from a mental or physical condition that significantly reduced his culpability for the crime, involving prior drug abuse and its impact on his psychiatric condition at the time he committed the offenses.

Rule 425: Criteria Affecting Concurrent or Consective Sentences:

(a)(1)     The crimes and their objectives were independent of each other, each (a)(3) involving separate victims in different locations.

(a)(4)     The crimes involved multiple victims.

(b)     There are numerous aggravating circumstances and a mitigating factor.

EVALUATION

The 31-year-old defendant, convicted by jury trial of multiple assaultive offenses and robbery, committed with the use of scissors, knife or physical force, appears to have gone on a "vengeful rampage" just two months after his release from a four year state prison sentence in Georgia for rape and "auto entering". His problems in returning to his family in Oakland (from whom he apparently was previously somewhat alienated), coupled with lack of employment and resources, sparked his embarking on a purse snatch-assaultive tirade resulting in the death of one young woman, and the traumatizing and assault of three others during nighttime hours adjacent to a major urban hospital. He could have committed the robbery-purse snatches without injury to the victims. Perhaps his confinement for rape (from which he had just been released from prison) influenced his choice of victims and method of assault. Whether his longstanding previous multiple drug abuse pattern exacerbated what appears to be early signs of significant emotional disturbance and anti-social conduct may be conjecture. Certainly failure in the military service coupled with a short-lived marriage, lack of employment and a troubled family life amply illustrate this defendant's life history, and predict a seriously maladjusted person and continuing criminal career.

Whether the state prison system is willing to invest psychological and psychiatric resources toward assisting the defendant is doubtful. If not, and absent the defendant's cooperation and "willing participation", he poses a severe danger to female persons in any community to which he will be released. Therefore, in view of the harm and loss to the decedant and her family, and due to the trauma and injury to the surviving victims, the Court should impose a substantial, if not maximum, sentence and also direct the Department of Corrections to provide what treatment and rehabilitative services are available for this defendant prior to parole consideration.

RECOMMENDATION

It is respectfully recommended that probation be denied.

Date typed: 2/1/84
tae

Respectfully submitted,

PAUL GREEN
CHIEF PROBATION OFFICER

Reviewed by:

By
   Jacqueline Townsend
   Deputy Probation Officer

Harold Klein
Unit Supervisor


I have read and considered
the foregoing report.

_____
JUDGE, SUPERIOR COURT