MORGAN A. TYSON
C-81713, 3N-4 LOW
SAN QUENTIN STATE PRISON
SAN QUENTIN, CA 94974



# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| **MORGAN A. TYSON,** ) | No. 07-05784 JF |
| ) | |
| Petitioner, ) | **TRAVERSE TO THE** |
| ) | **ANSWER TO PETITION FOR** |
| ) | **WRIT OF HABEAS CORPUS;** |
| ) | **MEMORANDUM OF POINTS** |
| **ROBERT AYERS, Warden, et al.,** ) | **OF AUTHORITIES** |
| ) | |
| Respondent. ) | |
| _____ ) | |

As a Traverse to the Answer to the Petition for Writ of Habeas Corpus, Petitioner

Morgan A. Tyson ("Petitioner") alleges as follows:

1. Petitioner agrees with the allegations in paragraph 1 of the Answer, but denies

   that his incarceration is lawful as a result of the allegation set forth in the

   petition for writ of habeas corpus and this traverse.

2. Petitioner agrees with the allegation in Paragraph 2.

3. Petitioner agrees with the allegation in Paragraph 3.

4. Petitioner agrees with the allegations in Paragraph 4.

5. Petitioner agrees with the allegations in Paragraph 5.

6.      Petitioner agrees, in part, with the allegation set forth in Paragraph 6, however disagrees with Respondent's assertions that he has not exhausted his claims to the extent that they are more broadly interpreted to encompass any systematic issues beyond the 2006 denial.

7.      Petitioner denies any assertion in Paragraph 7, that the Board gave any consideration to the second-degree murder and the fact that by the Board's own Matrix guidelines, the circumstances of this second-degree murder does not provide any evidence to preclude parole. The facts of the crime and all the relevant facts were known to the sentencing judge at the time of sentencing. They did not change from hearing to hearing. In fact, they will never change. Although the Board is to consider the severity of the crime, its role is to evaluate the likelihood that the inmate presents a current danger to society based on his overall comportment during the period of incarceration, not resentence the inmate by substituting its own opinion of severity of the crime for that of the sentencing judge. The Board had already considered various circumstance and victims' situations when it set the criteria for aggravating factors and for setting parole terms. (Cal. Rules of Regs. Tit. 15 §2403.) It is simply unreasonable and impressible for the Board to use the same factors that went into formulating the guidelines for setting terms as the stated reason to deny parole. See Little v. Hadden  504 F. Supp. 558.

8.      Petitioner denies any assertion in Paragraph 8, that he does not have a protected liberty interest in parole.

Traverse

9. Petitioner denies the allegations in Paragraph 9 that the state courts' denial of habeas corpus relief were not contrary to, or involved an unreasonable application of, clearly established United States Supreme Court law, or that the denial were based on an unreasonable interpretation of facts in light of the evidence presented. Petitioner has not failed to make a case for relief under AEPDA. The Board ignored or minimized the overwhelming evidence in favor of suitability and instead relied on the commitment offense to deny petitioner parole. The Board acted in conformity with a sub rosa policy and practice of using the crime itself to deny parole.

10. Petitioner admits, in part, to the allegation in Paragraph 10, but denies that the Board provided all due process available. Petitioner has a right to an individualized determination of parole eligibility by an impartial decision-maker. The Board "**shall**" normally set a parole date at the initial parole consideration hearing. Under California Law "shall" in mandatory. (See California Rules of Court: Rule 407 (a) and California Penal Code section 3041 (a).)

11. Petitioner denies the allegations in Paragraph 11.

12. Petitioner denies the allegations in Paragraph 12.

13. Petitioner admits the allegations in Paragraph 13.

14. Petitioner denies the allegations in Paragraph 14.

15. Petitioner agrees with the allegation in Paragraph 15.

16. Petitioner denies the allegation in Paragraph 16 and claims that an evidentiary hearing is necessary because there are factual findings in dispute and the

State's factual findings are not binding on federal habeas corpus. See <u>Taylor</u> <u>v. Maddox</u>, 366, F. 3d 992, 1001 (9th Cir. 2004). Petitioner has established a colorable claim for relief in citing the Board's arbitrary practice of characterizing virtually every crime as exceptional. <u>Earp. v. Ornoski</u>, 432 F. 3d 1158, 1167 (9th Cir. 2005)

17.    Petitioner asserts that he has established grounds for federal habeas relief and that the court should vacate the Board's unsuitability determination.

18.    Except as expressly admitted above, Petitioner denies generally and specifically each and every allegation in the Answer, and specifically asserts that his administrative, statutory and constitutional rights have been violated.

19.    For the reasons stated in his Petition and other filings in this case, and in the following memorandum of Points and Authorities, the Court should grant the Petition, order a new hearing that comports with the statutory, regulatory, and case law.

## MEMORANDUM OF POINTS AND AUTHORITIES

## THE HABEAS PETITION SHOULD BE GRANTED BECAUSE THE STATE COURT DECISION WAS CONTRARY TO, OR AN UNREASONABLE APPLICATION OF, CLEARLY ESTABLISHED FEDERAL LAW, OR BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS

### A. PETITIONER HAS A FEDERALLY PROTECTED LIBERTY INTEREST IN PAROLE AND A RIGHT TO A PAROLE HEARING THAT COMPLIES WITH DUE PROCESS.

It is appropriate to look to lower Federal Court decisions to determine what law has been "clearly established" by the Supreme Court and the reasonableness of a particular application of the law. See <u>Duhaime v. Ducharme</u>, 200 F. 3d 597, 598 (9th Cir. 1999)

Tyson v. Ayers
Case No. 07-05784JF

The Ninth Circuit has held that California's parole scheme creates a cognizable liberty interest in parole because Penal Code Section 3041 uses mandatory language and is similar to the Nebraska and Montana statutes addressed in Greenholtz and Allen respectively. [Greenholtz v. Inmates of Nebraska Penal, 442 U.S. 1, 7 (1979) and Board of Pardons v. Allen, 482 U.S. 369, 371 (1987)] As the Ninth Circuit has explained: "Section 3041 of the California Penal Code creates in every inmate a cognizable liberty interest in parole which is protected by the procedural safeguards of the Due Process," and that interest arises "upon the incarceration of the inmate." Biggs v. Terhune, 334 F. 3d 910, 914-915 (9th Cir. 2003). See Sass v. California Board of Prison Terms (9th Cir 2006) 451 F. 3d 1123.

The Board may not make a decision that is "otherwise arbitrary." Irons v. Carey, 479 F. 3d 657, 662 (9th Cir. 2007), citing Sass, 461 F. 3d at 1128-29 and Superintendent v. Hill, 472 U.S. 445, 457 (1985). Parole suitability is "framed by the statutes and regulations governing parole suitability determinations in the relevant state." The Court must "look to California law to determine the findings that are necessary to determine whether the state court decision holding that these findings were supported by 'some evidence'…constituted an unreasonable application of the 'some evidence' principle articulated in Hill." Irons (Id.).

"Some evidence" that an inmate is currently dangerous must support a decision to find an inmate is unsuitable for parole in accordance with California statutes and regulations.

In In re Dannenberg (2007) 156 Cal. App. 4th, 1387, Dannenberg "struck multiple blows to his wife's head with a pipe wrench. Bleeding profusely, she then 'fell or was

pushed' into a bathtub full of water, where she drowned/" (Id. at p. 1394.) The court acknowledged that second-degree murder demonstrated a callous disregard for human suffering; yet, it concluded that the offense did not provide the requisite evidence that Dannenberg was presently dangerous. (Id. at p. 1398.)

The Court of Appeal found that "[n]o evidence in the record…supports a conclusion…that Dannenberg currently poses an unreasonable risk of danger to society if released." (In re Dannenberg, supra, 156 Cal. App. 4th at p.1391.)

This is also illustrated by Hayward v. Marshall (9th Cir. 2008)__F. 3d___[2008 WL 43716] In Hayward, the court ruled that the Governor's 2003 reversal of parole based on the gravity of the petitioner's 1978 second-degree murder violated due process. (2008 WL 43716 at *8.) Hayward demonstrated the Biggs warning that the parole authority's "continued indefinite reliance on an unchanging factor, such as the circumstances of the commitment offense, pre-conviction criminal history, or other past conduct," may ripen into a due process violation in the face of a longstanding showing of reform and rehabilitation. (2008 WL 43716 at *7.)

Similarly, when viewed fairly and in context, there is no evidence that supports a determination that petitioner's release would unreasonably endanger public safety.

## B. THE CALIFORNIA PAROLE SCHEME REQUIRES THAT PAROLE SHALL NORMALLY BE GRANTED. THE STATE COURT DECISIONS UPHOLDING THE BOARD'S PAROLE DENIAL WERE AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW

The California legislature has clearly expressed its intent that when murderers-who are the great majority of inmates serving indeterminate sentences-approach their

minimum eligible parole date, the Board "shall normally set a parole release date." (Pen.

Code Section 3041, subd. (a).)

The Board's authority to make an exception based on the gravity of a life term

inmate's current or past offenses should not operate so as to swallow the rule that parole

is "normally" to be granted."

In 2006, 4,657 parole hearings were conducted. Parole was granted to only 23

inmates. The Board of Parole Hearings combined with the governor rejected 99.5 per

cent of lifer's applications for parole. [Source: California Department of Corrections and

Rehabilitation; Governor's Office, as reported in San Francisco Chronicle]

Petitioner contends that as a matter of law and logic, a parole granting rate of one half

of one per cent fails to comply with the mandate of Penal Code Section 3041 (a) which

requires that parole be normally to be granted. Petitioner maintains that applying the

exception of Section 3041 (b) to well over ninety percent of the applicants considered by

the Board violates due process.

In Spisak v. Mitchell, 465 F.3d 684 (6th Cir. 2006), the Court found that Petitioner

presented a valid claim of ineffective assistance of counsel entitling him to habeas relief.

In particular, this Court found that Petitioner was prejudiced by his counsel's deficient

performance at the sentencing phase of Petitioner's trial inasmuch as counsel's closing

argument focused almost entirely on the heinous nature of Petitioner's crime and his

deficient nature as a person. Defense counsel in no way attempted to rehabilitate

Petitioner in the eyes of the jurors, who would eventually have to decide whether to

recommend the death penalty. There is no evidence in the record suggesting that

Petitioner in any way contributed or consented to counsel's outrages remarks during

Traverse

Tyson v. Ayers
Case No. 07-05784JF

closing arguments. Relying on Supreme Court's precedent applying the standard for

ineffective assistance of counsel, the Sixth Circuit court of Appeal reasoned that defense

counsel's conduct was so deficient, prejudicial and indeed, egregious, that it overcame

the high bar for habeas relief established by the Antiterrorism and Effective Death

Penalty Act of 1996 ("AEDPA"); consequently the Court remanded for a new mitigation

phase of trial.

In Spisak v. Hudson, 512 F.3d 852, after the United States Supreme Court ordered

the Sixth Circuit court of Appeal to review its decision of Musladin and Landrigan , the

Sixth Circuit Court held:

> ....[T]he fact that the Supreme Court has not squarely addressed a situation
> involving a counsel's deficient performance during closing arguments of the
> mitigation phase of a trial does not preclude this Court's finding that the state
> court unreasonably applied federal law as announced in Strickland. Indeed, as
> the Supreme Court recently noted in Panetti v. Quarterman, 551 U.S ___, 127
> S.Ct. 2842, 1`68 L.Ed.2d 662 (2007), "AEDPA does not 'require state and
> federal courts to wait for some nearly identical factual pattern before a legal
> rule must be applied/'" Id, at 2858 (quoting Musladin, 127 S.Ct. at 656
> (Kennedy, J., concurring)). Accordingly, we may find the application of a
> *principle* of feral lay unreasonable despite the "involve[ment of] a set of facts
> 'different from those of the case in which the principle was announced.'"

Petitioner proceeds as if the AEDPA applies and maintains that he is entitled to

relief under AEDPA standards. Here, the state court decision denying Petitioner habeas

relief were both contrary to, or involved an unreasonable application of, clearly

established federal law as determined by the Supreme Court of the United States, and

resulted in a decision that was based on an unreasonable determination of the facts in

light of the evidence presented in the state court proceedings. See Green. V. White, 232

F.3d 671, including N. 3 (9th Cir. 2000). "The touchstone of due process is protection of

the individual against arbitrary action of government." Wolff v. McDonnell, 418 U.S.

Traverse

Tyson v. Ayers
Case No. 07-05784JF

8

539, 558 (1974), citing <u>Dent v. West Virginia</u>, 129 U.S. 114 (1889). A government

official's arbitrary exercise of his authority violates the essence of due process, contrary

to centuries of Anglo-American jurisprudence. See <u>Yick Wo v. Hopkins</u>, 118 U.S.

("When we consider the nature and the theory of our institutions of government, the

principles upon which they are suppose to rest, and review the history of their

development, we are constrained to conclude that they do not mean to leave room for the

play and action of purely personal and arbitrary power."

Concomitant to the guarantee against arbitrary and capricious state action is the

right to a fact finder who has not predetermined the outcome of a hearing. <u>Withro v.</u>

<u>Larkin</u>, 421 U.S. 35 (1975) (a fair trial in a fair tribunal is a basic requirement of due

process, and this rule applies to administrative agencies which adjudicate as well as to

courts); <u>Edward v. Balisok</u>, 520 U.S. 641 (1997) (recognizing due process claim based on

allegations that prison disciplinary hearing officer was biased and would suppress

evidence of innocence); <u>Bakalis v. Golembeski</u>, 35 F.3d 318, 326 (7th Cir. 1994) (a

decision-making body "that has prejudged the outcome cannot render a decision that

comp[orts with due process.")

### C. THE "SOME EVIDENCE" STANDARD REQUIRES THAT THERE BE SOME EVIDENCE THAT IS PROBATIVE OF CURRENT DANGEROUSNESS. THE BOARD'S FINDINGS MUST BE SUPPORTED BY A PREPONDERANCE OF THE EVIDENCE

Parole unsuitability factors must be supported by a preponderance of the evidence. <u>In</u>

<u>re Rosenkrantz</u> (2002), 29 Cal. 4th 616 at p. 670. The board failed to state that its findings

were made in accordance with this burden of proof.

Court's reviewing the board's determinations have held that due process requires that "some evidence" support the board's determination and that the evidence relied upon must possess "some evidence of reliability." <u>Caswell v. Calderon</u>, 353 F. 3d 832, 839 (9th Cir. 2004). See <u>Cass v. Woodford</u>, 2006 WL 1304953 at *9 (S.D. Cal. 2006)

It is not enough that there is some evidence to support the factors cited for denial of parole; that evidence must also rationally support the core determination required by the statute before parole can be denied, i.e. that a prisoner's release will unreasonably endanger public safety. <u>In re Lee</u> (2006) 143 Cal. App. 4th 1400, 1408.

Because the overarching consideration is public safety, the test in reviewing the Board's decision denying parole "is not whether some evidence supports the reasons [the board] cites for denying parole but whether some evidence indicates a parolee's release unreasonably endangers public safety." <u>In re Barker</u> (2007) 151 Cal. App. 4th 346, 366, italic omitted.)

The Federal "Some Evidence" standard as applied in <u>Rosenkrantz v. Marshall</u> (C.D. Cal. 2006) 444 F. Supp. 2d 1063 and <u>Martin v. Marshall</u> (N.D. Cal. 2006) 431 F. Supp. 2d 1038 finds that an aging commitment offense falls short of providing "some evidence" sufficient to justify a denial of parole. See also, <u>Willis v. Kane</u> (N.D. Cal. 2007) 485 F. Supp. 2d 1126

Petitioner asserts that the "some evidence "standard is not appropriate at the fact finding level but only suitable for use by an appellate court in the context of reviewing lower court decisions. The Supreme Court explained in a plurality opinion that it has utilized the "some evidence" standard not as a standard of proof, but rather as a standard of review when examining an administrative record developed in an adversarial

proceeding. <u>Hamdi v. Rumsfield</u>, 542 U.S. 5507, 124 S. Ct. 2633, 2651, 159 L. Ed. 2d 578 (2004), n. 8.

The state courts that adopted <u>Hill</u>'s some evidence standard to review parole decision held that prisoners did **not** have a due process liberty interest in parole. <u>In re Powell</u> 45 Cal. 3d 894, 911 (1988) Because the contrary is now established (<u>McQuillion</u>, 306 F. 3d at 902; <u>Rosenkrantz</u>, 29 Cal. 4th at 621; see <u>Sass</u>, 461 F. 3d at 1128), due process certainly demands a finding of something more than "some" (any) evidence in the record to secure a vested liberty interest protected by the Due Process Clause.

No other state whose parole statutes provide a protected liberty interest in parole, or any defined liberty interest allows it to be extinguished by the mere presence of any evidence whatsoever. In <u>Carrillo v. Fabian</u>, 701 N.W. 2d 763 (2005), the Minnesota Supreme Court recently and explicitly held that the some evidence standard of review of a prison disciplinary action established in Hill is inapplicable to the review of a correctional agency's decision affecting an inmate's parole date in a state whose statutes provide a protected liberty interest in parole.

The court held, based on the tripartite test prescribed by the Supreme Court, that the "substantial evidence" standard of review is requisite to provide adequate due process protection.

In <u>Santosky v. Kramer</u> (1982) 455 U.S. 745, 767-769, 102 S. Ct. 1388, 71 L. Ed. 2d 599, the High Court explained:

> This Court has mandated an intermediate standard of proof-"clear and convincing evidence"-when the individual interest in a state proceeding are both "particularly important" and "more substantial than mere loss of money." "Addington v. Texas, 441 U.S., at 424, 99 S. ct., at 1808…the Court has deemed this level of certainty necessary to preserve fundamental fairness in a variety of government-initiated proceedings that threaten the individual involved with "a significant deprivation

of liberty" of "stigma" [citations]…The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be 'condemned to suffer grievous loss'" Goldberg v. Kelly, 397 U.S. 254, 262-263, 90 S. Ct. 1011, 1017-18, 25 L. Ed. 2d 287 (1970), quoting Joint Anti-Fascist Refugee Committee v. McGrath, 341U.S. 123, 168, 71 S. Ct. 624, 646, 95 L. Ed. 817 (1951) (Frankfurter, J. concurring).

Santosky v. Kramer, 455 U.S. 745, at 756, 758 (1982)

This Court should apply the clear and convincing or substantial evidence standard to adjudicate petitioner's constitutional claims.

### D. THE BOARD'S RELIANCE ON THE COMMITMENT OFFENSE AND IMMUTABLE PRE-CONVICTION FACTORS TO DENY PAROLE VIOLATES PETITIONER'S DUE PROCESS RIGHTS

In Biggs v. Terhune (9th Cir. 2003) 334 F. 3d 910 the Ninth Circuit cautioned that continued reliance on the circumstances of the offense could result in a due process violation if the prisoner continually demonstrates exemplary behavior and evidence of rehabilitation. The Board's decision to deny parole in this case relied on the commitment offense and petitioner's conduct prior to the commitment offense.

Petitioner is entitled to have his release date considered by a Board that is free from bias or prejudice. O'Bremski v. Maas, 915 F. 2d 418, 422 (9th Cir. 1990)

Petitioner was denied parole based on the gravity of the commitment crime, the circumstances of which can never change. Therefore, the Board's continued sole reliance on the commitment offense will essentially convert petitioner's sentence of life with the possibility of parole into a sentence of life without the possibility of parole. Petitioner has no chance of obtaining parole unless the Board holds that his crime was not serious enough to warrant a denial of parole. Irons v. Warden, (E.D. Cal. 2005) 358 F. Supp. 2d 936, 947.)

The Board cited the "gravity" of the commitment offense in denying parole.

"[T]he measure of atrociousness is not general notions of common decency or social

norms for by that yardstick all murders are atrocious." In re Lee (2006) 143 Cal. App. 4th

1400, 1401. Viewed under the appropriate guidelines, petitioner's crime does not qualify

as unusually calculated, cruel or callous. He did not taunt the victim or gloat over his

distress. See People v. Misa (2006) 140 Cal. App.4th 937. 842-843.

The California Court of Appeal in In re Elkins (2006) 144 Cal. App. 4th discussed

the use of the gravity of the commitment offense to support a denial of parole:

> "Scott II summarizes the law in this situation. 'The Governor's assumption that a
> prisoner may be deemed unsuitable for release on the basis of the commitment
> offense 'alone' is correct [citation], but the proposition must be properly
> understood. The commitment offense is one of only two factors indicative of
> unsuitability a prisoner cannot change (the other being his 'Previous Record of
> Violence').
>
> Reliance on such an immutable factor 'without regard or consideration of
> subsequent circumstance' may be unfair [citation], and runs contrary to the
> rehabilitative goals espoused by the prison system and could result in a due
> process violation. [citation] ...The commitment offense can negate suitability
> only if circumstances of the crime reliably established by evidence in the record
> rationally indicate that the offender will present an unreasonable public safety risk
> if released from prison. Yet, the predictive value of the commitment offense may
> be very questionable after a long period of time. Thus, denial of release based
> solely on the basis of the gravity of the commitment offense warrants especially
> close scrutiny." (Scott II, supra, 133 Cal App. 4th at pp 594-595, fns. omitted.)

The Court of Appeal stated that "it violates due process to deny parole "where no

circumstances of the offense reasonably could be considered more aggravated or violent

than the minimum necessary to sustain a conviction for that offense." (Scott II, supra, 133

Cal. App 4th at p. 598)..."

The Court of Appeal in Elkins also observed: "We also take into account that

whatever facts make a given offense aggravated or mitigated, compared to the

hypothetical average are not overlooked or disregarded when the Board sets a release date…A release date is set by a calculation under matrixes Section 2403, subds. (b)-(f) that require the Board to weigh myriad facts of the offense that might be aggravating (Section 2404) or mitigating (Section 2405), including any factors that would have been considered by a judge in choosing a determinate sentence…Thus [the Board]…must remain focused not on circumstances that may be aggravating in the abstract but, rather, on facts indicating release currently poses "an unreasonable risk of danger to society." (Section 2402, subd. (a); accord, Pen. Code, Section 3041, subd. (b))."

The Board's reliance on Petitioner's commitment offense, which took place almost 22 years ago to deny parole, was unreasonable. A plethora of very recently issued California state and federal district court decisions uniformly holds that evidence of even particularly egregious facts of commitment offenses is not tantamount to evidence of undue current parole risk absent articulation of a nexus between those entities. Willis v. Kane, 485 F. Supp. 2d 1126, 1135 (N.D. Cal. 2007) ["Notwithstanding the terrible nature of the crime, the critical question the BPH was supposed to decide at the parole suitability hearing was whether 'consideration of the public safety requires a more lengthy period of incarceration for this individual'…Willis' 1983 crime did not provide sufficient evidence to find him unsuitable for parole in 2003."] Martin v. Marshall, 431 F. Supp. 2d 1038, 1049 (N.D. Cal. 2006); Blankenship v. Kane, 2007 WL 1113798 at *10 (N.D. Cal. 2007) ["…the California regulations require…some evidence that the prisoner poses a present danger to society…continued reliance over time on an unchanging factor…the commitment offense…does not provide evidence of a present danger to society"];

Thomas v. Brown, 2006 WL 3783535 at *6 (N.D. Cal. 20060]; Rosenkrantz v. Marhsall, 444 F. Supp 3d. 1963, 1086 (C.D. Cal. 2006).

Petitioner Morgan Tyson cannot escape the underlying offense. It is a tragedy that will never change. He cannot erase the criminal conduct that occurred prior to the offense. That will never change either. Only Tyson can change and time can pass. Tyson's change has been substantial and exemplary over the past 26 years.

At this point, the underlying offense and the prior offense are no longer "some evidence ' that will rationally support a finding that public safety requires that Kelly be found unsuitable for parole. See Hayward, 512 F.3d at 545 ("a continued reliance on an unchanging factor such as the circumstances of the commitment offense, pre-conviction criminal history, or other past conduct, might in some cases result in a due process violation at some point.") The Board and Governor's reliance on the commitment offense and offenses that predate it do not withstand constitutional scrutiny. In the context of the relevant California factors, these reasons are not some evidence that "the prisoner will pose an unreasonable risk of danger to society if released from prison. 15 Cal. Code Regs. §§ 2281(a) and 2402 (a).

The relevant California regulation states that circumstance that tends to indicate unsuitability includes commission of the offense in "an especially heinous, atrocious or cruel manner." 15 Cal. Code Regs. § 2281(c)(1)(emphasis added). "The factors to consider include: ... (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering." Id. (emphasis added.) Under California law, "The measure of atrociousness is not general notions of common decency or social norms, for by that yardstick all murders are atrocious. ... 'All second-degree

murders by definition involve some callousness – i.e. lack of emotion insensitivity, indifference to the feelings and suffering of others.' Rather, the inquiry is whether among murders the one committed by [the inmate] was particularly heinous, atrocious or cruel." In re Gray, 151 Cal.app.4th 379, 404 (2007), citing In re Lee, 146 Cal.App.4th 1400 (2006)(italics omitted). This is obviously true for first-degree murder as well. See In re Elkins, 144 Cal.app.4th 475, 497 (2006).

If California Legislature wanted to make punishment for second degree murder life imprisonment, or 25 years to life, or life without the possibility of parole, it could have done so. Instead it made the punishment 15 years to life, with presumption of parole to be granted at the initial parole consideration hearing to be held one-year prior to the inmate's MEPD (See Cal. Penal Code § 3041 (a)), and unless release of the inmate presents an **unreasonable** risk to public safety. Because there is not some present evidence showing Petitioner would be dangerous if released, let alone an "unreasonable risk," the Board's rationale and the Superior Court rationale are simply an extended imposition of the punishment from the minimum prescribed by the Legislature to an indefinite term that can go on forever, regardless of the efforts and practical effects of the inmate's efforts toward redemption.

Interpreting the California parole suitability guidelines, California courts have found decisions to deny parole unsupported by some evidence in cases where the petitioner perpetrated the killing on facts much worse than in this case.

In In re Barker, 151 Cal.App.4th 346, 353-354, 372-375 (2007), Barker helped his friend kill his father and grandfather, The friend shot the father, who was watching television, in the head three times and shot the mother two times. The petitioner struck

the grandfather on the head three or four times with a chisel and then shot him in the head with a rifle. Nonetheless, this was insufficient to support a finding of unsuitability. "Some evidence" did not support denial.

In In re Singler, 2008 Cal.App. LEXIS 408, the California Appellate Court, Third Appellate District, explained the direction in which the California Supreme Court wants the courts to apply the recent appellate courts decisions.

> The California Supreme Court granted **Singler's** petition for review and transferred the matter to this court, with directions to vacate our denial of the petition and to order the Board to show cause why it 'did not abuse its discretion and violate due process in finding petition unsuitable for parole in June 2006, and why petitioner remains a danger to public safety. [*6] (See, Pen. Code, § 3041; In re Rosenkrantz [, supra,] 29 Cal.4th [at p.] 683; In re Elkins (2006) 144 Cal.App.4th 475, 496-498 [50 Cal.Rptr.3d 503]; In re Lee (2006) 143 Cal.App.4th 1400, 1408 [49 Cal Rptr.3d 931]; In re Scott (2005) 133 Cal.App.4th 573, 594-595 [34 Cal.Rptr.3d 905].)' (Order granting petn, review, Apr. 25, 2007.) This court issued the order to show cause, as directed, and the Board has filed its return.
>
> The Supreme Court's order- signed by the author of In re Rosenkrantz, supra, 29 Cal.4th 616 and five other members of the court (only Justice Baxter did not endorse the order) – indicates to us the Supreme Court has endorsed subsequent Court of Appeal decisions that give courts greater leeway in reviewing the Board's determination that an inmate remains a danger to public safety.
>
> No longer giving the Board the deference to which we thought it was entitled (In re Rosenkrantz, supra, 29 Cal.4th at pp. 655, 665, 677, 679), we must now conclude that its decision finding **Singler** unsuitable for parole is not supported by the evidence presented at the time of the hearing.

The Federal "Some Evidence" standard as applied in Rosenkrantz v. Marshall (C.D. cal. 2006) 444 F.Supp.2d 1063 and Martin v. Marshall (N.D. Cal. 2006) 431 F.Supp.2d 1038 finds that an aging commitment offense falls short of providing "some evidence" sufficient to justify a denial of parole.

The new recent cases and authority supports Petitioner's claims of due process violations and this Court should adopt the above reasoning and order Tyson's immediate release and discharge from parole under Cal. Regs. Tit. 15 § 2345.

### E. THE BOARD'S DETERMINATION THAT A CRIME IS PARTIUCLARY CRUEL OR EGREGIOUS IS MADE IN AN ARBITRARY AND UNCONSTITUTIONAL MANNER

The Board's determination that petitioner's crime was especially cruel or egregious is unconstitutionally vague and standard less. See <u>United States v. Doremus</u> (9th Cir. 1989) 888 F. 2d 630, 634. Under California law, in order to determine if a defendant commitment offense was "especially heinous, atrocious, or cruel," which is a special circumstance that qualities him or her to a sentence of Life Without the Possibility of Parole, or the Death Penalty, this element must be given to the jury in order to find it true against the defendant. The State is now circumventing this very important right of due process by allowing the Board to change the sentence, therefore taking away the various difference between second-degree murder and first-degree murder sentences. (See Cal. Penal Code §§ 190.2 (14), and 190.4.)

The Board relies on any fact of the crime to bolster its conclusion that the crime is particularly egregious. The Board makes a determination that virtually ALL life crimes are particularly egregious.

The Board's characterization of petitioner's crime as exceptional was arbitrary since the Board and governor routinely and invariably characterizes all offenses carrying life terms as exceptional. Petitioner asks this Court to take judicial notice of the order in <u>MIKE NGO On Habeas Corpus Superior Court of Santa Clara</u>, No. 127611, August 30, 2007, where the Honorable Linda Condron found comprehensive evidence indicating that

the state's Board of parole hearings completely disregards the detailed standards and

criteria of the parole release statute, 15 CCR Section 2402 (c) and thereby denies

prisoners' due process rights.

The Honorable Judge Condron found:

"In summary, when every single inmate is denied parole because his or her crime
qualifies as a Section 2402(c) (1) exception to the rule that a parole date shall
normally be set, then the exception has clearly swallowed the rule and the rule is
being illegally interpreted and applied.

When every single life crime that the Board examines is "particularly egregious" and
"especially heinous, atrocious or cruel" it is obvious that the Board is operating
without any limits and with unfettered discretion. "Based on the arbitrary
characterization of every murder as being exceptional, the Board's decision denying
parole for petitioner is per se invalid because he was denied his constitutional right to
be heard by an impartial decision-maker. See Withrow v. Larkin, 421 U.S. 35, 47, 95
S. Ct. 1456, 43 L. Ed. 2d 712 (1975) ("Not only is a biased decision maker
constitutionally unacceptable but "our system of law has always endeavored to
prevent even the probability of unfairness.")

When an inmate is found suitable for parole, the Board does not deem the crime as

particularly egregious. However, the governor when reviewing the Board's determination

may disagree and consider the crime as particularly egregious and deny parole. At a

subsequent hearing the Board may again classify the crime as particularly egregious.

The change in classification of the very same crime from being non-exceptional to

particularly egregious demonstrates the arbitrariness of the classification process itself.

The Board's [and Governor'] use of uncharged and unproven elements of his crime to

continue denying parole violates petitioner's constitutional right to a jury trial. See

Aprendi v. New Jersey, 530 U.S. 466, 490.

## F. CONTINUED RELIANCE ON THE COMMITMENT OFFENSE HAS DISTORTED THE BOARD'S DISCRETION

While a denial of parole by the Board in one case may appear reasonable when it cites standardized reasons for denying parole, when dozens of decisions are read in seriatim, it is apparent that the Board has an ultra vires policy of using the crime itself to deny parole to virtually every inmate serving a life-term for murder. Petitioner has a due process liberty interest in "not being denied parole for arbitrary or impermissible reasons" [Meachum v. Fano, 427 U.S. 215, 226 (19760] or as a result or "flagrant or unauthorized action." [Monroe v. Thigpen, 932 F. 2d 1437, 1442 (11ᵗʰ Cir. 1991)] The Board fails to give individualized discretion to inmates serving life terms by invoking the crime itself to deny parole in virtually every case it considers.

The commitment offense no longer supplies any evidence that petitioner posed a danger to public safety. The Board failed to articulate a nexus between the commitment offense and a finding that petitioner still posed an unreasonable, or any, danger to public safety.


Petitioner's commitment offense was not particularly egregious because there was no more than the minimum elements present necessary to convict petitioner of second-degree murder.

The Board's denial of parole suitability based upon the gravity of the commitment offense failed to consider that petitioner has reached the maximum eligible parole date for a **first-degree murder** and failed to analyze the crime in light of that fact. The respondent's position that petitioner who was only convicted of second degree murder may forever be denied parole based on some modicum of evidence that the crime rose to the level of a first degree murder, without acknowledging the fact that petitioner has

already served the time for a first, should be seen as so ridiculous that simply to state it is to refute it." In re Weider 920060 145 Ca. App. 4th, 570, 582-583. The Board should have weighed petitioner's crime against instances of first degree murder in assessing the applicability of any Section 2402(c)(1) criteria.

Petitioner's crime was set at second-degree murder. The Board is precluded from recharacterizing it as a first-degree murder and then relying on those characterizations of the crime as proof that the crime was "especially" cruel, grave and callous. While the Rosenkrantz court stated that, the Governor is free to disregard a jury's conclusion and reinterpret the crime as a first-degree murder such is precluded where there is a plea bargain. The plea bargain binds the executive branch to the agreement that the crime is no more than a second-degree murder.

Petitioner had a reasonable expectation that he was sentenced to a term for a second-degree murder. "Plea agreements...are unique contracts in which special due process concerns for fairness and the adequacy of procedural safeguards obtain." United States v. Ready, 82 F. 3d 551, 558 (2d Cir. 1996).

## CONCLUSION

The Board failed to articulate what it is about petitioner's crime that outweighs all the statutorily mandated parole release standards. The Board systematically uses the fact of a murder conviction, without more, to keep prisoners locked up for the rest of their lives. The role of the parole board is not to resentence the prisoner according to the personal opinions of its members as to the appropriate penalty for murder, but to determine whether as of this moment, given the statutory factors, he should be released.

The Board stated no justifiable reasons for denying parole. "The evidence must substantiate the ultimate conclusion that the prisoner's release currently poses an unreasonable risk of danger to the public. It violates a prisoner's right to due process when the Board or Governor attaches significance to evidence that forewarns no danger to the public or relies on an unsupported conclusion." In re Tripp (2007) 150 Cal. App. 4th 306, 313

Dated: April 22, 2008          Respectfully submitted:

Morgan A. Tyson
In Pro Per

# DECLARATION OF SERVICE BY MAIL

I, _Hector Oropeza_ , the undersigned, declare:
Printed Name of Declarant

I am over the age of 18 years, a citizen of the United States of America, and am not a party to the cause within. My residence address is:

CDC No. _H-24646_     Housing _4N-92 up_
San Quentin State Prison
San Quentin, CA 94974

On _April 22_ , _2008_ , I served the following document(s):
    Month/Day        Year

TRAVERSE TO THE ANSWER TO PETITION FOR WRIT OF
HABEAS CORPUS; MEMORANDUM OF POINTS OF AUTHORITIES
        TYSON V. AYERS
CASE NO: 07-05784 JF

on the parties and at the addresses described below by placing the pleadings in a sealed envelope, with postage fully prepaid, and presented said item(s) to Corrections Department staff for mailing in the United States Mail as per the rules and regulations governing outgoing legal mail at San Quentin State Prison.

CALIFORNIA ATTORNEY GENERAL'S OFFICE
DEPUTY ATTORNEY GENERAL: STEVEN G. WARNER
455 GOLDEN GATE AVE., SUITE 11000
SAN FRANCISCO, CA 94102-7004

I swear under penalty of perjury that the foregoing is true of my own personal knowledge. Executed on this _22nd_ day of _April_ , _2008_ , at San Quentin, CA, County of Marin.

Signature of declarant

LEGAL MAIL

MORGAN A. TYSON
F-81 3 SON LOW
SAN QUENTIN STATE PRISON
SAN QUENTIN, CA 94974

APR 23 2008

CLERK OF THE COURT
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
280 S. FIRST STREET, #2112
SAN JOSE, CA 95113-3008

FIRST CLASS
FIRST CLASS
FIRST CLASS
FIRST CLASS
FIRST CLASS
FIRST CLASS